THOMPSON BROS. LUMBER CO. v. LONGINI et al.

(Court of Civil Appeals of Texas. Galveston. Nov. 21, 1912. Rehearing Denied Dec. 12, 1912.)

1. APPEAL AND ERROR (§ 750*)—ASSIGNMENTS OF ERROR—SCOPE AND EFFECT OF ASSIGNMENTS.

On appeal, in an action for cutting timber, an assignment of error that the testimony conclusively established that the timber was cut more than two years before the commencement of the action, and that, there being no evidence to the contrary, the verdict and judgment for plaintiff was not supported by it, and was against preponderance of the evidence, raised only the question whether the undisputed evidence showed that the timber was cut more than two years before the commencement of the action, especially where defendant in its brief waived all questions, except that whether the cause of action was barred by limitations "as shown by the undisputed evidence."

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3074–3083; Dec. Dig. § 750.*]

2. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR—PROPOSITIONS.

Where an assignment of error only raised the question that there was no evidence to support the verdict, a proposition, if intended to attack the verdict as against the preponderance of the evidence, was not germane to the assignment, and would not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

3. LIMITATION OF ACTIONS (§ 199*) — EVIDENCE—WEIGHT AND SUFFICIENCY.

In an action for cutting timber on another's land, in which defendant pleaded limitations, evidence *held* to present a question for the jury whether the timber was cut within two years before the commencement of the action.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 727–730; Dec. Dig. § 199.*]

Appeal from District Court, Tyler County; W. B. Powell, Judge.

Action by E. Longini and others against the Thompson Bros. Lumber Company and others. Judgment for plaintiffs, and the defendant named appeals. Affirmed.

J. A. Mooney and J. J. Goodwin, both of Woodville, and Lane, Wolters & Storey and Wm. A. Vinson, all of Houston, for appellant. W. A. Johnson and Joe W. Thomas, both of Woodville, for appellees.

McMEANS, J. This is a suit of trespass to try title for the recovery of lot No. 2 of the E. T. Hanks league, in Tyler county, brought on July 9, 1909, in the district court of Tyler county, by E. Longini, Frederick Milheiser, and W. H. Howard, against Thompson Bros. Lumber Company, Cave Johnson, W. G. Pennington, Mrs. Annie Cruse, and Ruth and John Knight Cruse. Plaintiffs alleged that Thompson Bros. Lumber Company had cut and removed the timber from said land, and sought by appropriate allegations to recover from said company the manufactured value thereof, or, in the alternative, the stumpage value. The Cruses disclaimed, and went out on their disclaimer. The plaintiffs admitted that defendants Pennington and Johnson were entitled to the portion of the land sued for described in their answers, and judgment was accordingly awarded them therefor. Defendant Thompson Bros. Lumber Company pleaded not guilty, and interposed a plea of the statute of limitations of two years to the plaintiffs' claim for damages. The case was tried before a jury, and resulted in a verdict and judgment for plaintiffs against Thompson Bros. Lumber Company for 113 acres of the land sued for and for the sum of $3,955 damages, being the manufactured value of the timber cut from said 113 acres. From

this judgment the defendant, after its motion for a new trial had been overruled, has appealed.

[1] The only question presented by appellant for our consideration is embraced in its first assignment of error. The assignment is as follows: "The defendant pleaded the statute of limitation of two years, and the testimony established conclusively that all the timber cut by defendant had been cut for more than two years prior to July 9, 1909. There being no evidence to the contrary, the verdict and judgment is not supported by it, and is against a preponderance of the evidence." Under this assignment appellant urges the following proposition: "The undisputed evidence, or at least the great preponderance of the evidence, shows that the plaintiffs' claim for damages for cutting the timber was barred by the statute of limitations of two years interposed by the defendant." As we understand the assignment of error, it assails the verdict on the sole ground that there is no evidence to support it.

[2] There is a further proposition, advanced in the assignment, that the verdict and judgment are against the preponderance of the evidence; but it is clear that the reason given for this is that the evidence conclusively established that the timber was cut by defendant more than two years prior to July 9, 1909 (the date when the suit was filed), and that there is no evidence to the contrary. We think, then, that the only question presented by the assignment for our consideration is this: Does the undisputed evidence show that the timber was cut by defendant prior to two years before July 9, 1909? That it was the intention of appellant to present this question only is manifest from a statement in its brief immediately preceding the page on which the assignment is copied, wherein it says: "In the presentation of this case to this court, we will waive all other matters, and will present this single question, viz.: The plaintiffs' cause of action for damages for cutting the timber was barred by the statute of limitations of two years, as shown by the undisputed evidence." If by the proposition following the assignment it is intended to attack the verdict and judgment as being against the great preponderance of the testimony, it is not germane to the assignment, and will not be considered.

[3] As before stated, this suit was filed July 9, 1909. Appellant does not deny that it cut and removed the timber, and the testimony clearly shows that it did so. Its only contention is that the undisputed proof shows it cut and appropriated the timber prior to two years before the filing of the suit. If, therefore, there is any testimony in the record sufficient to justify the jury in concluding that the timber was taken within two years prior to July 9, 1909, their verdict should be upheld. Under the assignment of error presented, we are not concerned with or called upon to settle any conflict of the evidence on this point.

Much of the testimony relied upon by plaintiffs is confusing and unsatisfactory; but we think the clearest is that given by the witness W. G. Pennington, and we here copy his testimony in full: "I am acquainted with the E. F. Hanks league of land. I live on some of it. I own some of the league of land. * * * I am acquainted with the strip there west of me, the whole tract. Thompson Bros. Lumber Company cut that timber. I could not say just exactly what time that timber was cut really. The best I remember it was cut either in the spring of 1907 or in the fall of 1907; that is as near as I could come at it, but I think it was in the fall of 1907. They crossed my land in the fall of the year, and they had to cross my land before they entered the land sued for. They passed my land some time between October and December. I could not say which. They built a tram. They put the tramroad there, and crossed my land. I believe it was in 1907, either in October, November, or December. They cut that timber after they cut mine. I could not say how long afterwards, but it was after they cut my timber. I don't know whether they ran a tramroad up north there, and cut some timber before they came back down there, and cut that timber west, and entered onto the Blount league. I was not working in the woods, and really don't know which tram they ran first outside of the main line. Whether they ran south of me, or north, right or left, I don't know which tram they run first. They cut this particular timber on this 113-acre strip west of me when they ran south. It was south of the main line. They crossed my land, the south part of that tract of land. This tract in the suit is about one and a half miles west of Ducette."

On cross-examination he testified: "I do not remember when the Thompson Bros. Lumber Company tramroad crossed the Texas & New Orleans Railway. I am not sure, but I think it was in the fall of 1907. If I am correct about that time, then I am correct with reference to the date on which this timber was cut. I merely know they cut this other timber on the Hanks league. If the tramroad crossed the Texas & New Orleans Railway in 1907, as to whether I am correct, then, with reference to when the timber on the 113 acres was cut, will say that I don't know what time it was cut. I think it was cut the same year the tramroad crossed, but I don't know how long afterwards. As to whether it is a fact that the tramroad crossed there in 1906, will say that I probably might be mistaken. I don't know what year. If it did cross in 1906, then the timber was not cut in the fall of

1907, not unless they were there a year in there on that land. I wasn't in the woods, and had no occasion to be there when they were working at it. I have nothing to fix the date exactly. As to whether I mean to tell this jury I don't know when it was, and told Mr. Thomas a while ago, will say I said I thought, to the best of my knowledge, it was in the fall of 1907, or spring of 1908. I think I said I knew it was cut after they cut mine; that is what I said. They went from my land onto the 113 acres sued for. I am not positive what year. If the tramroad crossed the Texas & New Orleans in 1906, then this timber would have to have been cut along about the spring of 1907. Since I have been studying about it, I really believe it was 1907 that the tramroad crossed the Texas & New Orleans Railway. If it crossed in 1906, then the cutting was done in the fall of 1906 and the spring of 1907; if it crossed in 1907, it was done in the fall of 1907 and spring of 1908; that is my belief."

On redirect examination he testified: "It is my best recollection about it that the tramroad passed through my land October, November, or December of 1907. Since I studied about it the last two or three days, it appears to me it was in the fall of 1907. This timber that is under investigation was cut some time after that, some part of it. The balance of the Hanks survey was cut after mine was cut. They built the tramroad right off of mine onto that. Mine was cut first, and this timber was cut after that, which was cut after October, November, or December, 1907. That is my best recollection about it. I think I am correct about that, after studying over the matter thoroughly."

On recross-examination he testified: "As to what timber was cut when the tramroad crossed the Texas & New Orleans Railway track, will say they cut mine, some I had sold to S. F. Carter, the party that owned it before the Thompson Bros. Lumber Company came there. They got that by purchase from the Carters after they got mine. Mine was the first timber they cut after they crossed the Texas & New Orleans Railway track. They cut the right of way timber first. They cut this timber immediately after they got through cutting mine. That was the first cutting they done immediately after they got through cutting mine."

From the foregoing testimony it will be seen that the witness testified that according to his best recollection appellants' tramroad was constructed through his land in October, November, or December, 1907, and that the timber in question was taken after the road was built, and that after studying over the matter thoroughly he thinks he is correct in this statement. If he was correct, then the timber was taken within two years

next before the filing of the suit, and the bar of the statute was not complete. It was the province of the jury to weigh his testimony and judge of its accuracy and reliability, and their verdict based upon it cannot be said to be without evidence to support it. Were we authorized, under any assignment of error properly raising the point, to consider whether the verdict and judgment are contrary to the great weight and preponderance of the testimony, we might feel constrained to hold in the affirmative; but, as before shown, the only question presented for our determination is whether there is any evidence to warrant the verdict. Believing that the verdict and judgment were supported by the evidence, we can only affirm the judgment; and it has accordingly so been affirmed.

Affirmed.