**GEOCHEMICAL SURVEYS et al.,**
Appellants,

v.

**Effie H. DIETZ et al., Appellees.**

**No. 10794.**

Court of Civil Appeals of Texas.

Austin.

Oct. 26, 1960.

Rehearing Denied Nov. 16, 1960.

Rutledge & Rutledge, Abilene, for appellants.

Grindstaff & Grindstaff, Ballinger, Hardeman, Smith & Foy, San Angelo, for appellees.

HUGHES, Justice.

Mrs. Effie H. Dietz, for herself and as guardian for her minor daughter, Sidney Ophelia Dietz, and Geral Wayland Dietz, appellees, owners of a one hundred and fifty acre farm in Runnels County, sued Geochemical Surveys, a partnership, to recover permanent damages to their farm allegedly caused by its negligent disposal of salt water into open pits on the Dietz and adjoining lands which seeped and percolated through underground porous formation into the Dietz fresh water well which it polluted and destroyed. This salt water was produced by Geochemical in the development of the area for oil and gas purposes under separate leases held by it from appellees and leases covering the G. M. Wood and M. E. Morrison tracts.

Trial to a jury resulted in verdict and judgment for appellees.

Appellants' first contention is that recovery was barred by the two-year statute of limitations. Art. 5526, Vernon's Ann. Civ.St. We overrule this contention.

This suit was originally filed by Effie Dietz alone on April 17, 1958. In it the only defendant was described simply as Geochemical Survey, a "company."

A First Amended Original Petition was filed January 24, 1959, in which appellees were plaintiffs and in which defendants were stated to be "Geochemical Surveys, a partnership composed of W. R. Ransome, C. V. A. Pittman and E. C. Reagor."

By trial amendment filed September 16, 1959, Eugene McDermott and E. E. Rosaire were named as members of the partnership. They were not served with process and did not appear and no judgment was rendered against them. Judgment was rendered against the partnership and against the three other partners who were served and who answered.

From appellants' production Superintendent, Mr. H. C. Wilson, it was established that an oil well drilled by them on the Dietz land began producing salt water in March, 1956. This salt water was run into a near-by earthen pit dug by appellants on the Dietz land. A total of 15,000 to 18,000 barrels of salt water was deposited in this pit prior to August, 1957, when use of the pit for this purpose was discontinued. This pit was about 1,000 feet from the Dietz water well.

An earthen pit on the adjoining Morrison tract was first used by appellants for disposal of salt water in 1952. Such use was discontinued in August, 1957. During such time 14,000 barrels of salt water were placed in the pit. This pit was about 3,000 feet from the Dietz water well.

An earthen pit on the adjoining Morrison tract was used by appellants for disposal of salt water from about January, 1954 to August, 1957, during which time about 12,000 barrels of salt water were put in the pit. This pit was about 2,500 feet from the Dietz water well.

Mr. Chris Gard, a civil engineer and an expert on ground water hydraulics, testified that ground water movement was very slow and that "it might move a half a foot a day, or might move more than that or less than that."

Appellee, Mrs. Dietz, testified that she first learned that the water in her well was polluted in January, 1958.

The Dietz farm had been unoccupied since June of 1956, although in the fall of that year cotton pickers used the house on the farm and the water from its well.

The only issues submitted to the jury bearing on the defense of limitations were issues inquiring when, in the exercise of ordinary care, appellees could have discovered the presence of salt water in their water well and when such discovery was actually made. The answer to both inquiries was January, 1958.

Neither of these issues was objected to by appellants and they did not request the submission of any special issues.

Relying, principally, upon the cases of Houston Water Works Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36, and Tennessee Gas Transmission Co. v. Fromme, 153 Tex. 352, 269 S.W.2d 336, 337, appellants take the position that appellees' cause of action, if any, accrued when the salt water was deposited in the earthen tanks. We disagree.

The following is taken from the Tennessee case:

" 'Where there is a direct invasion of one's property of a permanent character, and the original invasion and its continuance are necessarily injurious, the damage is original, and may be at once fully compensated * * *. In such case the statute begins to run from the date of the invasion * * *.' 28 Tex.Jur. 149, Limitation of Actions, Section 66.

"The early case of Houston Water Works Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36, 37, is decisive of the prime question here involved. The question

is: When did respondent's cause of action accrue? After stating the facts, the Court said: 'This was an act wrongful towards the owner of the property, for which an action might have been maintained as soon as the tort was committed. When an act is in itself lawful as to the person who bases an action on injuries subsequently accruing from, and consequent upon, the act, it is held that the cause of action does not accrue until the injury is sustained. * * * If, however, the act of which the injury was the natural sequence was a legal injury,—by which is meant an injury giving cause of action by reason of its being an invasion of a plaintiff's right,—then, be the damage however slight, limitation will run from the time the wrongful act was committed, and will bar an action for any damages resulting from the act, although these may not have been fully developed until within a period less than necessary to complete the bar.' "

The acts of appellants in depositing salt water in the earthen tanks were lawful acts. They did not constitute an invasion of appellees' property, were not necessarily injurious to it, and they, of themselves, gave appellees no cause of action. The injury sustained by appellees was the pollution of their well. Prior to this injury appellees had no cause of action.

Directly in point are the cases of Beck v. American Rio Grande Land & Irrigation Co., Tex.Civ.App., San Antonio, 39 S.W.2d 640, writ ref. and Gulf Oil Corp. v. Alexander, Tex.Civ.App., Amarillo, 291 S.W.2d 792, 793.

In Beck suit was brought to recover permanent damages to land caused by seepage from canals and barrow pits on adjacent property. Answering the contention that the suit was barred by the two-year statute of limitations because the canals and pits had been used for more than two years before the suit was brought the Court said [39 S.W.2d 641]: " * * *. in such cases

limitation runs from the time the injury complained of becomes apparent, or should have been discovered by due diligence on the part of the party affected by it."

In Gulf Oil Corp. v. Alexander, suit was brought by a landowner to recover damages for salt water pollution of the fresh water underlying his property by seepage of salt water from a salt-water disposal pit constructed and used by Gulf in oil and gas operations on its leasehold on adjoining land. The jury there found that salt water from Gulf's disposal pit invaded water-bearing formations underlying a part of plaintiff's land more than two years before suit was brought. In overruling the plea of limitations the Court said [291 S.W.2d 795]:

"The two year statute of limitation is applicable to appellee's cause of action for pollution of the subsurface strata of water furnishing his irrigation well. Such statute of limitation began to run on March 1, 1953, the date on which the uncontroverted evidence reveals that appellee discovered that the water as pumped for irrigation was polluted by salt water. The rule as applied here as to pollution of appellee's subsurface strata of water is that limitation ran from the time the injury complained of became apparent or should have been discovered by due diligence on the part of the appellee. * * * Tennessee Gas Transmission Co. v. Fromme, 153 Tex. 352, 269 S.W. 2d 336, and like authorities cited by appellant, are not applicable to an issue as to subsurface water pollution by salt water intrusion."

See also Wichita County Water Improvement Dist. v. Pearce, 59 S.W.2d 183; McClellan v. Krebs, 183 S.W.2d 758, both by the Fort Worth Court of Civil Appeals, Kolberg v. Hidalgo County Water Imp. Dist., Tex.Civ.App., San Antonio, 110 S.W 2d 961, and Houston Natural Gas Corp. v. Pearce, Tex.Civ.App., Houston, 311 S.W.2d 899, writ ref. N.R.E.

In view of these authorities and the findings of the jury as to the discovery of injury by appellees and their diligence in this respect, we are of the opinion that the plea of limitation was not well founded.

■ Appellants group points 8, 9, 10 and 16 for briefing. They are to the effect that there is no evidence of negligence or of proximate cause to support relevant jury findings or the judgment. We disagree.

The locations and amounts of salt water deposited in pits used by appellants have been stated. In terms of tonnage of salt the evidence is that from 450 to 540 tons of salt were put into the Dietz pits, 420 tons of salt in the Wood pit, and 360 tons of salt in the Morrison pit.

These pits were dug in a limestone bed which underlies the Dietz, Morrison and Wood tracts. This limestone was relatively porous.

Mr. Chris Gard, a civil engineer and hydrologist, testified that the continuous bed of limestone underneath this area sloped, generally, from the southeast to the northwest and "from the salt water pits toward Mrs. Dietz water well," and that water could move through any continuous formation provided it was sufficiently porous.

Mr. Gard also determined the slope of water table underlying this area and found that it followed the slope of the surface.

Mr. Gard testified:

"Q. In particular, Mr. Gard, does the water table slope in a direction that would take underground water from the salt water disposal pit on the Dietz lease toward the Dietz water well? A. Yes.

\* \* \* \* \* \*

"Q. Are you able to express an opinion on the *casual* relation, if any? A. Yes. My opinion is that there is a causal relation between the disposal of salt water in those three pits and the water in Mrs. Dietz well. The

water in her, the salt in the water in her well does not come from all three sources; one or more.

"Q. The pollution has come from those pits, is that your opinion? A. That is my opinion."

The evidence shows that sealing the salt water pits with an impervious material or using flares to aid in evaporation of the water were ways of reducing the leakage from those pits and could have been used. Testimony was also given to the effect that reinjecting the sale water into the formation from which it was produced was the best method of disposing of it.

The jury found that appellants failed, in disposing of salt water produced from wells on leases operated by them, to protect the fresh water strata under the Dietz land from pollution by salt water and that this was negligence and a proximate cause of the damage to the Dietz fresh water well.

The jury also found that appellants were negligent in emptying the salt water into open earthern pits, in failing to seal these pits and in failing to return the salt water to the formations from which produced, and that these negligent acts were proximate causes of the damage to the Dietz water well.

As indicated, it is our opinion that these findings are supported by evidence of probative force.

Points 12, 13 and 14, grouped for briefing, question the action of the Court in denying appellants' various motions for an instructed verdict and for judgment.

No additional statement is made under these points and from the argument it appears that a mere resume of the limitation and no negligence points is made.

We adhere to our rulings previously made and overrule the points under consideration.

■ Appellants' first point is next briefed. It complains of the overruling of

their plea to the jurisdiction of the Trial Court. The substance of the plea, brought forward, is that the partnership sued was not sufficiently described in that its members were not identified.

We overrule this point upon the authority of Rule 28, Texas Rules of Civil Procedure, which provides, in part, that a partnership may sue or be sued in the partnership name, and the case of Johnson v. Pioneer Mortgage Co., Tex.Civ.App., El Paso, 264 S.W. 2d 761, writ dismissed, holding that the rule means just what it says. This opinion was by present Supreme Court Associate Justice Hamilton. Of course, the judgment to be rendered in such cases is controlled by Arts. 2033, 2223, V.A.C.S.

Before judgment was rendered in this cause all the partners of Geochemical were named in the pleadings of appellees, three of whom appeared and answered.

Appellants' second and third points relate to the action of the Trial Court in overruling certain of their special exceptions to appellees' pleading.

■ Appellants excepted to that portion of the pleading alleging that they "and each of them jointly and severally, negligently and carelessly caused, permitted and allowed salt water to escape from premises upon which they were conducting oil operations, into fresh water supply contributing to, and constituting the flow of a well upon" appellees' land. They also excepted to that portion of appellees' pleading alleging that appellants violated Rule 20 of the Railroad Commission of Texas providing that "Fresh water whether above or below the surface, should be protected from the pollution whether in drilling, plugging or disposing of salt water already produced." The exceptions urged were that these pleadings do not sufficiently inform appellants of the proof which appellees might offer in support of these allegations.

Without copying the entire pleading of appellees it is not possible to fully demonstrate the inadequacy of appellants' special exceptions. We copy, however, the following specific allegations of negligence made by appellees in their pleading:

"a) In that they negligently and carelessly caused, permitted, and allowed said salt water to collect in surface pits from which they knew, or in the exercise of ordinary care should have known, that said salt water would escape and flow and percolate in such a way as to pollute Plaintiffs' fresh water supply as hereinabove alleged.

"b) In that they negligently and carelessly failed and omitted to adopt any approved method or any effective method in disposing of said salt water to prevent pollution of fresh water strata, and in this connection failed and omitted either to return such salt water into the well from which it was pumped and flowed or by an abandoned well or other means, into the strata from which it flowed or was pumped or, to place the same into a water tight container capable of holding it and preventing it from flowing away or escaping, or to prevent any other effective collection of the same to prevent its escape.

"c) In that they negligently and carelessly failed and omitted to seal the surface of the pit into which said salt water was caused, permitted and allowed to flow, or to provide adequate flares to cause evaporation thereof."

It is our opinion that appellants' special exceptions were not well taken.

It is also our opinion that the record does not reflect that appellants were surprised by any evidence offered to show their negligence in the premises and neither does it show any harm to have resulted to appellants from the overruling of these exceptions.

Appellants' fourth and fifth points are the Court erred in admitting evidence of damage to appellees' lands by the discharge of salt water on adjacent lands for the reason

that there were no pleadings as a basis for the admission of this evidence.

These points are overruled.

Appellees pleaded that appellants were negligent in permitting "salt water to escape from premises upon which they were conducting oil operations" which they alleged "seeped through the underground * * * and reached (appellees') well."

Furthermore, appellants were not misled or surprised by the introduction of this evidence. Months before the trial, appellants' production superintendent testified, by deposition, to the production and disposal of salt water by appellants on their three leases here involved. None of this testimony was objected to by appellants.

Appellants' seventeenth, eighteenth and nineteenth points relate to the admission in evidence of a hypothetical question, and its answer, asked by appellees of their witness, Chris Gard, and two charts prepared by him.

The hypothetical question propounded to Mr. Gard was several pages in length and during its statement counsel for appellants digressed to ascertain from the witness additional matters which he desired to include in the hypothetical question.

We quote appellants' objection to the question:

"Your Honor, we object to the hypothetical question. It does not include all of the elements necessary to support the opinion or answer called for. It assumes matters that are not supported by the record in this matter here, and therefore is not a proper hypothetical question, and the basis for the inquiry as a hypothetical question has not properly been laid and therefore we object to it."

This objection is too general. It was properly overruled by the Trial Court, and our review of his ruling is not required. Texas Indemnity Ins. Co. v. Perdue, Tex. Civ.App., Amarillo, 64 S.W.2d 386, writ ref.

We find no abuse of the Court's discretion in permitting counsel to augment the facts desired included in the hypothetical question during the statement of the question.

Appellants' points twenty through thirty-two are directed to alleged errors in the Court's charge to the jury.

In their Motion for New Trial appellants assigned error in these particulars by assignments all in the form of the following example:

"The Court erred upon the trial of this cause in overruling the objections made in defendants' written objection to the Court's Charge directed to Special Issue No. 1 thereof, as such objections are shown in paragraphs 2 to 7 of such written objections."

Rule 320, T.R.C.P., provides, in part, that a motion for new trial shall "* * * specify each ground on which it is founded * * *."

Rule 321, T.R.C.P., provides, in part, that each ground of a motion for new trial shall be stated "* * * in such way as that the point of objection can be clearly identified and understood by the court."

Rule 322, T.R.C.P., provides, in part, that "Grounds of objections couched in general terms * * * shall not be considered by the court."

"Specify" within the meaning of Rule 320, supra, has been defined as "to mention or name in a specific or explicit manner; to tell or state precisely or in detail." Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407, 409.

In Texas Life Ins. Co. v. Jordan, Tex. Civ.App., Fort Worth, 253 S.W.2d 906, 908, writ refused, now Supreme Court Associate Justice Culver, in writing for the Court stated:

"Appellant, in his fifth point, asserts the court erred in overruling its objections and exceptions Nos. 1 to 10, inclusive, of the court's charge without pointing out any particular error, but asked the court to review all of the ten objections and the eight pages of the same. This point is stated much too generally and does not comply with Rules Nos. 321, 322 and 374, T.R.C.P. Roeser v. Coffer, Tex.Civ.App., 98 S. W.2d 275; Bauguss v. Bauguss, Tex. Civ.App., 186 S.W.2d 384, writ refused, w. m."

It is our opinion that appellants have not properly preserved the points under consideration, and if there are any errors respecting them such errors have been waived.

We have not overlooked the cases of Brown v. Lundell, Tex.Civ.App., Amarillo, 334 S.W.2d 616, and General Crude Oil Co. v. Aiken, Tex.Civ.App., Eastland, 335 S.W. 2d 229, writs granted in both cases.

These cases were between the landowner and his lessee under an oil and gas lease who operated solely on the leased premises. They were not, as here, between the landowner and his lessee who operated on adjacent land as well as on the leased premises.

Insofar as the pollution of appellees' well was occasioned by the dumping of salt water on adjacent land is concerned, this case is controlled by the law of Ownby Drilling Co. v. McClure, Tex.Civ.App., Austin, 264 S.W.2d 204, writ ref., N.R.E., and authorities therein cited.

We do not find in the record any effort on the part of appellants to separate differing duties or degrees of negligence which may exist between a landowner and his oil lessee and a landowner and a tort-feasor committing injurious negligent acts on adjacent land. Neither do we find any objection made by appellants to appellees' failure to make this distinction, if one exists.

In any event, we believe that we have correctly disposed of all points properly preserved and presented to us, and finding no reversible error it becomes our duty to affirm the judgment of the Trial Court. It is so ordered.

Affirmed.