**TENNECO OIL COMPANY, Appellant,**

v.

**J. R. ROLLANS, Appellee.**

**No. 7546.**

Court of Civil Appeals of Texas.

Amarillo.

Dec. 13, 1965.

Rehearing Denied Jan. 17, 1966.

Nelson, Montgomery & Robertson, Wichita Falls, J. D. Moon, Midland, for appellant.

L. G. Owens, Greenville, for appellee.

CHAPMAN, Justice.

The original petition instituting the cause of action that resulted in the judgment appealed from herein was filed on September 17, 1963, by J. R. Rollans, appellee, against Tenneco Oil Company for salt-water damages to land caused by flooding operations of appellant, Tenneco Oil Company. The Fourth Amended Petition upon which appellee went to trial alleged that the overflow of appellant's salt water emergency pits, surface pipes and broken water lines carrying salt water escaped into Turkey Creek running through appellee's farm and grazing land, causing damages to the creek bottom, banks, and soil immediately adjacent thereto.

The case was submitted to a jury on issues confining the damage recovery period within two years immediately prior to the filing of the original petition and on the theory of the difference in the value of the entire tract of 543 acres on September 17, 1961, and the corresponding date two years later. The jury rendered a verdict of $9,774.00 difference in the value of the whole tract of land on that date and $210.00 for the death of a cow from drinking the water in the creek. Judgment was awarded appellee for $9,984.00, from which appeal is properly perfected to our court upon eighteen points of error. The first three points raise the two-year limitation statute, which was properly pleaded, raised in the trial court, and preserved on appeal.

A special issue was requested inquiring if any amount of salt water flooded from the Tenneco Oil Company lease upon appellee's land prior to September 17, 1961, through Turkey Creek or any of its branches, and a conditional issue as to *whether such salt water damaged appellee's land.* (Emphasis added). The trial court refused each issue with the following qualification:

"The above requested issue of the defendant was refused by the Court for the reason that both parties in open Court agreed that the matters inquired about therein were undisputed and that the undisputed facts would only justify an answer of yes to such issue."

In arguing the limitation question by brief appellant cites several names and the record pages where it contends there are many witnesses who testified to salt-water damages to appellee's land prior to September 17, 1961. The brief then states: "The specific testimony of the witnesses is not here set out in view of the admissions hereinafter set out which were made by the parties at the conclusion of the testimony." We have searched the record carefully and are unable to find such admissions. We would expect them to be included in the statement of facts. Since they are not, we have also searched the transcript and exhibits but have been unable to find them. Neither brief makes

record reference as to where such admissions allegedly made by the parties may be found. We would assume the court's qualifications made to the requested issues are based upon the admissions referred to, but since they are not in the record we do not feel bound by the qualifications in view of appellee's testimony hereinafter quoted from his re-direct examination.

However, there is probative evidence which raises the question of an invasion of appellee's land through Turkey Creek of salt water from the Tenneco Oil Company leases and consequent damages thereto prior to September 17, 1961, more than two years before the suit was filed.

Garland Ray, one of appellee's own witnesses, testified in effect that in May of 1961 the Tenneco Oil Company lease was being water flooded, that "there was plenty of evidence of leaks all over the whole place;" that it looked like they had been there before and that it showed salt water had been running down the creek in appellee's pasture.

Another witness for appellee, M. T. Baker, testified:

"Q. Did you ever see any water escaping from the lease during that time?

A. Yes, I have.

Q. Now, I will ask you to explain to the jury what you mean, how it escaped?

A. Well, they had lines running to the injection wells, and the water was going through the lines at high pressure, and the lines would create a leak and the water would escape.

Q. Have you seen it escape?

A. Yes, sir, many times.

\* \* \* \* \* \*

Q. Now, what went with that water that you saw escaping there?

A. It had a tendency to go down Turkey Creek.

\* \* \* \* \* \*

Q. Now, after the salt water reached Turkey Creek there at that bridge, where did it go down Turkey Creek?

A. It went south until the creek made a bend, and turned east and went across the Rollans farm.

Q. Well, to get on before 1961, I believe you answered this question, though, was there any apparent salt-water damage on Mr. Rollan's farm?

A. Only slight damage."

In its First Amended Original Answer appellant pleaded the two-year statute of limitations and then in a trial amendment specially pleaded that the salt water from Tenneco Oil Company's leases flooded onto or invaded appellee's land, and a portion of it, if damaged, was damaged prior to September 17, 1961.

However, appellee was called back to the witness stand on re-direct examination and testified that the first time there were "any signs of new salt water that I know was salt-water damage, was approximately the first of January, 1962." We believe a fair interpretation of the record would indicate that in the quote just made he was there talking about damage from the Tenneco Oil Company leases because there is probative evidence that much of the area from which water drained into Turkey Creek was salt infested and that water with salt content had been flowing into Turkey Creek since 1942 from land not involved in the Tenneco leases.

Our Supreme Court in quoting with approval from a textual statement has held:

" 'Where there is a direct invasion of one's property of a permanent character, and the original invasion and its continuance are necessarily injurious, the damage is original, and may be

**220**

at once fully compensated * * *. In such case the statute begins to run from the date of the invasion * * *.' " Tennessee Gas Transmission Co. v. Fromme, 153 Tex. 352, 269 S.W.2d 336.

The court in the case just quoted from also held:

" 'If, * * *, the act of which the injury was the natural sequence was a legal injury,—by which is meant an injury giving cause of action by reason of its being an invasion of a plaintiff's right,—then, *be the damage however slight*, limitation will run from the time the wrongful act was committed, and will bar an action for any damages resulting from the act, although these may not have been fully developed until within a period less than necessary to complete the bar.' " (Emphasis theirs).

We believe it is clear that this is a type act that comes within Section 1 of Article 5526, Vernon's Ann.Tex.Civ.St., wherein it provides:

"There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

1. Actions of trespass for injury done to the estate or the property of another."

 However, because of the above quoted testimony given by appellee on redirect examination, we believe the testimony is sufficiently conflicting as to preclude our holding as a matter of law that the limitation plea should have been sustained. We believe the jury also had the right under this record to pass on the accuracy and reliability of the testimony of the party at interest, appellee.

It has been textually stated that:

"Where * * * the defense in limitation is raised by plea, and evidence on the issue is introduced, the question as to whether the cause of action is barred is *ordinarily* one of fact for the jury." Vol. 37 T.J.2d, Sec. 208, Page 400 (Emphasis ours).

This rule would certainly be applicable, we believe, where the accuracy and reliability of the testimony of a witness is under consideration. Thompson Bros. Lumber Co. v. Longini, Tex.Civ.App., 151 S.W. 888, right-hand column, Page 890 (writ refused), and where the evidence is conflicting. Bailey v. Trammell, 27 Tex. 317, 328.

There are other serious questions raised by appellant but we believe it unnecessary to discuss them, in view of what we have said on the limitation question.

Accordingly, the judgment of the trial court is reversed and remanded for a new trial.