Charlie MATYSEK et al., Appellants,

v.

Tom B. MEDDERS et al., Appellees.

Charlie Joe MATYSEK et al., Appellants,

v.

Tom B. MEDDERS et al., Appellees.

Nos. 7928, 7929.

Court of Civil Appeals of Texas.

Amarillo.

June 30, 1969.

Rehearing Denied July 28, 1969.

Storey, Hightower & Neely and John Mikkelsen, Vernon, for appellants.

Nelson, Montgomery & Robertson and Allan D. Montgomery, Wichita Falls, for appellees.

DENTON, Chief Justice.

These two causes were brought to recover for permanent damages to the substrata fresh water formation under plaintiffs' land polluted by salt water from adjoining land. The trial court entered a summary judgment for the defendants. The two causes below have been consolidated for appeal by agreement of the parties. The two causes involve the same land and were filed by members of the same family who held different interests in the land at the time of the filing. One suit was filed June 8, 1967 and the second suit was filed June 12, 1967.

The Matyseks are the owners of a 160-acre tract of land in Wilbarger County, Texas. Tom B. Medders, together with other out-of-state defendants were the owners of an oil and gas lease covering the Matysek property and adjoining property owned by Lela Oliver. The plaintiffs alleged the defendants maintained a salt water disposal well on the adjoining Oliver tract, and that the defendants negligently permitted salt water to escape from the disposal well into the fresh water strata under the plaintiffs' land, polluting a house well and an irrigation well on their land. Medders filed a motion for summary judgment on the ground the plaintiffs' cause of action was barred by the 2-year statute of limitations. Article 5526, Vernon's Ann. Civ.St. The 2-year statute of limitations is applicable to appellants' cause of action for pollution of the sub-surface strata of fresh

water. Gulf Oil Corporation v. Alexander (Tex.Civ.App.) 291 S.W.2d 792 (Ref. N.R.E.).

■ In an action for damages for pollution of the sub-surface strata of fresh water, limitations run from the time the injury complained of became apparent or should have been discovered by due diligence on the part of the party affected by it. Beck v. American Rio Grande Land & Irrigation Co. (Tex.Civ.App.) 39 S.W.2d 640 (Writ Ref.). Crawford v. Yeatts (Tex. Civ.App.) 395 S.W.2d 413 (Ref.N.R.E.). Geochemical Surveys v. Dietz (Tex.Civ. App.) 340 S.W.2d 114 (Ref.N.R.E.). Gulf Oil Corporation v. Alexander, supra.

The defendants' motion for summary judgment is based upon the depositions of Lillie Matysek and Charlie Joe Matysek, two of the plaintiffs below. It is undisputed Medders is the only oil operator in the proximity of appellants' land and has an oil and gas lease and producing wells on appellants' land and others in the immediate vicinity. An oil well, designated the Oliver well, located on the property adjoining appellants to the west was converted into a salt water disposal well in February 1961. Appellants' house is located near the west boundary of their property, approximately 1000 feet from the disposal well. A water well supplying appellants' house is located to the northeast of the house. Appellants' irrigation well is located approximately 1000 feet from the house near the center of the 160-acre tract. A tank battery consisting of three oil storage tanks is located on appellants' premises, approximately 500 feet south of their house. There was some suspicion of contamination of sub-surface water in the vicinity of appellants' farm prior to February 1960 as evidenced by a letter addressed to the Railroad Commission, dated February 8, 1960 by Charlie Joe Matysek in which he referred to eight Texaco oil wells in the area being "shut down because of salt water" and stated further "people think one of these wells is leaking and letting salt water in the surface

water". The record shows the first test of appellants' house well was made March 23, 1963. This and subsequent tests were made to determine the salinity content of the water. The test measured in terms of parts per million chlorides and was expressed as p. p. m. The test in March 1963 showed 142 p. p. m. chlorides which was considered normal in the area. In early September 1964 appellants discovered a salty taste in the water from the house well. A test of the house well on September 3, 1964 showed a chloride content of 667 p. p. m. Thereafter appellants contacted the Railroad Commission and requested an investigation of the salt water problem. The Railroad Commission, through Alvin Raschke, its engineer, conducted a series of tests of appellants' wells and recommended the drilling of two test holes. This report of their sub-strata water supply was dated November 24, 1964. The report is in the record upon agreement of the parties. The Railroad Commission's tests of the house well on September 29, 1964 showed a 1040 p. p. m. chloride; a test of the irrigation well on the same date showed 170 p. p. m. chloride. The house well was tested four times during a two hour period on October 7, 1964. These tests showed: 935 p. p. m.; 960 p. p. m.; 980 p. p. m.; 1010 p. p. m. chlorides. During this period of late September and early October 1964, appellants agreed to drill two test wells at their own expense. One test hole was drilled between the Matysek house well and the Oliver salt water disposal well. The second test well was drilled between the house well and the tank battery. Samples of water from these two test wells were tested on October 13, 1964. The test hole between the house well and the Oliver well tested 13,700 p. p. m. The other test well tested 190 p. p. m. The results of these tests convinced both the Railroad Commission engineer and the appellants the salt water pollution's origin was from the Oliver salt water disposal well rather than from the tank battery located on appellants' land. A "tracor survey" was then run on Medders' disposal well and a hole was discover-

ed in the well's tubing. Surface pipe was reset at 109 feet and "cemented with 75 sacks" according to the Railroad Commission's report. Medders then drilled another water well to the northeast of the Oliver disposal well for the purpose of pumping as much of the salt water out of the fresh water sand as possible. Additional tests of appellants' house well were subsequently made December 14, 1964, February 15, 1965, March 4, 1965, and June 1, 1965. The results varied from 700 p. p. m. chlorides to 380 p. p. m. chlorides, all above the accepted chloride content. On June 1, 1965 the irrigation well tested 560 p. p. m. chlorides, an increase of 490 p. p. m. from the tests made on September 29, 1964. On February 5, 1965, appellant Charlie Joe Matysek again wrote the Railroad Commission complaining of his pollution problem. He acknowledged that the Railroad Commission engineer and Medders "have been working on this since October 1964, and don't seem to be getting anything done".

 The summary judgment evidence, including the depositions of two appellants themselves, clearly establishes appellants' legal rights were invaded by the pollution of their sub-surface fresh water strata by salt water from Meddlers' disposal well in the Fall of 1964. Tests made at appellants' request revealed this fact. It is undisputed appellants were fully aware of the pollution in September 1964 by the salty taste of their water and subsequent tests which confirmed the existence of excessive salt content. Appellants' cause of action for such damages to their land accrued and limitations began to run at the time the injury became apparent. Kolberg v. Hidalgo County Water Improvement District (Tex.Civ.App.) 110 S.W.2d 961. Herndon v. G. C. McBride, Inc. (Tex.Civ.App.) 342 S.W.2d 10. Since the pollution of appellants' fresh water occurred and became known to them more than two years before suit was brought on June 8, 1967, their cause of action became

barred by the two-year statute of limitations.

The judgment of the trial court is affirmed.