Frank E. BAYOUTH et al., Appellants,

v.

LION OIL COMPANY et al., Appellees.

No. 11–82–292–CV.

Court of Appeals of Texas,
Eastland.

May 12, 1983.

Rehearing Denied June 2, 1983.

Jimmy P. Horany, T.W. Schueller, Law Offices of Schueller & Macha, Barry L. Macha, Wichita Falls, for appellants.

Rodney Satterwhite, Marc Skeen, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Midland, R. Temple Dickson, Moore, Dickson, Roberts & Ratliff, Inc., Sweetwater, for appellees.

RALEIGH BROWN, Justice.

This is a summary judgment case. Plaintiffs[1] filed their original petition on April 15, 1976, alleging that defendants[2] had permanently damaged their land by negligently permitting saltwater to migrate from defendants' oil leases on to plaintiffs' nearby property. Plaintiffs alleged that Bayouth discovered the saltwater invading his property on October 10, 1970. The invasion of saltwater on the Pope property was discovered on October 25, 1971. Plaintiffs alleged that such invasion and resulting contamination had been continuous from the date of its discovery and persisted through the time suit was filed. Bayouth sought permanent damages based on the difference between the reasonable cash market value of his 315 acres before and after contamination, for a total of $110,250. The owners of the Pope property, J.B. and Brucene Pope and Ganann heirs, sought permanent damages based on the difference between the reasonable cash market value of their 828 acres before and after contamination, for a total of $165,600.

On April 30, 1981, five years after the original petition was filed, and after the statute of limitation was urged by defendants in their motions for summary judgment, plaintiffs amended their petition, joining Bill D. Saxon as a defendant and changing all damage allegations from "permanent" to "temporary."

The relief sought by the parties was changed from diminution in value of their respective tracts, to costs of reclamation over a twenty year period and loss of crop production from 1974 through 1981 for fifty acres of the Bayouth tract, for a total of $126,000 in alleged temporary damages to Bayouth. The owners of the Pope property sought costs of reclamation of 120 acres over a twenty year period as well as loss of crop production on 85 of the affected acres and loss of livestock income on 35 of the affected acres from 1974 to 1981. The cost of supplementally feeding and watering their livestock from 1974 to 1981 was also sought by the owners of the Pope property, bringing the total of their temporary damage allegations to $200,200. Plaintiffs further sought exemplary damages and preservation of their rights to pursue subsequent temporary damages which may arise from a time period not included within this lawsuit.

---

1. Frank E. Bayouth, J.B. Pope and wife, Brucene Pope, Annie Ganann, John G. Ganann and Virginia Ganann Pearson.

2. Lion Oil Company, Saxon Oil Company and Monsanto Company, (successor to Monsanto Chemical Company).

All defendants moved for summary judgment based on the applicable statute of limitations, Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon Supp.1982–1983).[3] The court, finding the existence of no genuine issue of material fact after considering "the pleadings, depositions, briefs and affidavits on file at the time of the hearing and those filed thereafter with permission of the Court," granted defendants' motions for summary judgment pursuant to Tex.R. Civ.P. 166–A.

Appellants' sole point of error is that the trial court erred in granting summary judgment in favor of appellees. There is no dispute as to the applicability of the two year statute of limitations, Article 5526, supra, or the fact that Bayouth discovered saltwater invasion of his property in 1970 and a similar invasion was discovered on the Pope property in 1971. The critical issue is whether appellants' damages, as pleaded and established by the summary judgment record, are permanent as a matter of law, barring their suit by limitations. Appellants' position is that they have alleged temporary damages in their amended pleading and should be allowed recovery for any injury occurring within two years prior to the time they filed suit. We find appellants' injuries to be permanent as a matter of law.

The summary judgment evidence consisted, in part, of the affidavits of a soil scientist and a geologist. The soil scientist's opinion, as stated in his affidavit, was that the saltwater damage to appellants' land is temporary and their land can be reclaimed for cultivation by a plowing and leeching process occurring over a twenty year period. The geologist's affidavit stated that he observed the saltwater disposal pits on appellees' leases, which are located approximately one and three quarters miles from appellants' property. Regarding the migration of saltwater from appellees' pits and its resulting invasion of appellants' property, the geologist stated:

The saltwater moves very slowly, and it took many years to flow and be pressured from the pits and wells on said leases to the Bayouth and Pope farms. Said flow of saltwater from the pits depends upon the rainfall after the wells were shut down and abandoned. I saw the damage from salt water contamination on the Bayouth and Pope farms on September 15, 1978, and it is my opinion and I know that said damage was sporadic and was intermittent and that it was not constant, but was irregular depending upon the rainfall for many years to flow, move, and force the saltwater to the farms causing the damage to the lands at irregular intervals.

It was undisputed in the trial court and on appeal that appellees, Lion Oil Company and Monsanto Chemical Company, ceased all operations on the lease in question in 1957. Saxon Oil Company and Bill D. Saxon ceased their operations on this lease in 1970. None of the appellees have had any further involvement with the disputed area from 1970 to the present.

The applicable rules to determine when appellants' cause of action accrued for limitations purposes are stated in *Baker v. City of Fort Worth*, 210 S.W.2d 564, 566 (Tex. 1948):

When the act is in itself lawful as to the person who bases an action on injuries subsequently accruing and consequent upon the act, it is held that the cause of action does not accrue until the injury is sustained. * * * If, however, the act of which the injury was the natural sequence was a legal injury, by which is meant an injury giving cause of action by reason of its being an invasion of plaintiff's right, then, be the damage however slight, limitation will run from the time the wrongful act was committed, and will bar an action for any damage resulting from the act, although these may not have been fully developed until within a

---

**3.** There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

1. Actions of trespass for injury done to the estate or the property of another. . . .

period less than necessary to complete the bar. * * * We conclude from the authorities that, where a nuisance is permanent and continuing, the damages resulting from it should all be estimated in one suit, but where it is not permanent, but depends on accidents and contingencies so that it is of a transient character, successive actions may be brought for injury as it occurs; and that an action for such injury would not be barred by the statute of limitations, unless the full period of the statute had run against the special injury before suit. The building of the embankment and the culverts, as alleged, was not of itself a nuisance. It was no invasion of plaintiff's rights. They were not put on his land. They became a nuisance only at intervals,—by diverting water from rainfalls from its usual flow upon plaintiff's land. The embankment and the culverts were permanent, but the nuisance was not. There was no constant and continuing injury.

In the instant case, appellants had no claim against appellees until the saltwater invaded appellants' property.

■ The parties agree that the "discovery rule" is applicable, meaning that the statute of limitations began to run at such time as appellants knew or reasonably should have known of their injury. *Gaddis v. Smith,* 417 S.W.2d 577 (Tex.1967). In the case at bar, limitations began at the time the saltwater invasion was discovered. Appellants' amended pleadings stated:

On or about October 10, 1970, Plaintiff Bayouth observed moisture and saltwater crystals near some old seismograph holes on the surface of the southeast portion of his land.

Similarly, regarding the Pope property, the pleadings stated:

The Plaintiffs first noticed salt contamination in the pasture on the west line of Plaintiffs' land on or about October 25, 1971, in that salt crystals and moisture had appeared on the surface adjoining the Frank Bayouth farm, and that thereafter the saltwater had spread over the farm south and east and in a northeaster-

ly direction and contamination and damaged many acres of the 828 acre tract of land.

Limitations thus began to run as to Bayouth in 1970 and as to the owners of the Pope property in 1971. This is true even though the extent of their legal injury or the extent of damages occasioned by that injury was yet unknown. *Tennessee Gas Transmission Co. v. Fromme,* 153 Tex. 352, 269 S.W.2d 336 (Tex.1954). There being no dispute as to appellants' knowledge of the saltwater invasion of their property more than two years before April 15, 1976, the date on which suit was filed, the pleadings on their face bar a recovery under a permanent damage theory.

Appellants' contention that their amended pleadings alleged facts allowing them to recover under a temporary damage theory raises the critical issue of whether the trial court properly granted appellees' motions for summary judgment on the basis of limitations.

Similarly faced with a determination of whether injuries were permanent or temporary, the court in *Atlas Chemical Industries, Inc. v. Anderson,* 524 S.W.2d 681, 684 (Tex. 1975) related the historical development of the two types of injury as follows:

The question of the temporary or permanent character of injury to land was initially conceived as an aspect of damages. At common law, a plaintiff suing for a continuing invasion of his land could recover for only those damages accrued by the time of trial. *Uline v. New York Cent. & H.R.R. Co.,* 101 N.Y. 98, 4 N.E. 536 (1886). To relieve the burden placed upon an aggrieved landowner to bring successive suits, the courts developed the concept of permanent injury to permit the recovery of past and future damages. *Town of Troy v. Cheshire R. Co.,* 23 N.H. 83, 55 Am.Dec. 177 (1851); McCormick on Damages sec. 127, at 505. Coactive with the advantage of a future damage award was the disadvantage of bringing the action within the limitation period as measured from the first injury; i.e., the cause of action accrued for limitation purposes

at the time of the first actionable injury. As Professor McCormick stated, "the plaintiff, who ought certainly to be given a continuing possibility of redress against a continuing wrong, finds himself blocked by a plea of limitations based on the claim that the only cause of action arose when the nuisance was first established." McCormick on damages, sec. 127, at 513. See Prosser, Handbook on the Law of Torts, sec. 13 at 75 (4th Ed.1971). *Missouri-Pacific Ry. Co. v. Davis,* 186 Ark. 401, 53 S.W.2d 851 (1932); *Schlosser v. Sanitary Dist. of Chicago,* 299 Ill. 77, 132 N.E. 291 (1921); *McDaniel v. City of Cherryvale,* 91 Kan. 40, 136 P. 899 (1913); 21 Ill.L.Rev. 629 (1927); 27 Ill.L.Rev. 953 (1933); 21 Minn.L.Rev. 334 (1936).

Further, discussing the distinctions between temporary and permanent damages, the court stated:

In Texas, it is settled that an action for permanent damages to land accrues for limitations purposes upon the first actionable injury. *Tennessee Gas Transmission Co. v. Fromme,* 153 Tex. 352, 269 S.W.2d 336 (1954); *City of Athens v. Evans,* 63 S.W.2d 379 (Tex.Com.App.1933, holding approved). Permanent damages result from an activity which is "of such a character and existing under such circumstances that it will be presumed to continue indefinitely"; the injury must be constant and continuous, not occasional, intermittent or recurrent. 58 Am.Jur.2d, Nuisance sec. 117 at 683. In *Tennessee Gas Transmission Co. v. Fromme,* supra, we held that the damage resulting from a continuous flow of polluted water on the plaintiff's land for four years was permanent, as a matter of law, and that the cause of action for damages therefrom arose at its beginning. Likewise, in *Vann v. Bowie Sewerage Co.,* 127 Tex. 97, 90 S.W.2d 561 (1936), the court stated the facts as showing conclusively that water in a polluted condition has been continually discharged since a septic tank had been placed in operation many years before; that the polluted water had found its way upon the land in question; and that the damage caused thereby was permanent.

Temporary damages, however, have been found where the injury is not continuous but is sporadic and contingent upon some irregular force such as rain. *Baker v. City of Fort Worth,* 146 Tex. 600, 210 S.W.2d 564 (1948); *Austin & N.W. Ry. Co. v. Anderson,* 79 Tex. 427, 15 S.W. 484 (1891), and wind, *Youngblood's Inc. v. Goebel,* 404 S.W.2d 617 (Tex.Civ. App.1966, writ ref'd n.r.e.). An explication of the type of circumstances that gives rise to a finding of temporary damage, and the result of such a finding on the limitations defense, was written in *Austin & N.W. Ry. Co. v. Anderson,* supra:

. . . We conclude from the authorities that, where a nuisance is permanent and continuing, the damages resulting from it should all be estimated in one suit, but where it is not permanent, but depends on accidents and contingencies so that it is of a transient character, successive actions may be brought for injury as it occurs; *and that an action for such injury would not be barred by the statute of limitations, unless the full period of the statute had run against the special injury before suit.* (Emphasis in text)

More recently, the differences between permanent and temporary damages were explained in *Kraft v. Langford,* 565 S.W.2d 223, 227 (Tex.1978) as follows:

*The character of an injury as either permanent or temporary is determined by its continuum.* Permanent injuries are those which are constant and continuous, not intermittent or recurrent. *Atlas Chemical Industries, Inc. v. Anderson,* supra. Temporary injuries are those which are not continuous but are "sporadic and contingent upon some irregular force such as rain." Id. *Another characteristic of a temporary injury is the ability of a court of equity to enjoin the injury causing activity.* An injury which can be terminated cannot be a permanent injury. The concepts of temporary and permanent injuries are mutually exclusive and

damages for both may not be recovered in the same action. *Lone Star Gas Co. v. Hutton,* 58 S.W.2d 19, 21 (Tex.Comm'n App.1933, holding approved). (Emphasis added)

Regardless of the fact that appellants denominated their damages as "temporary," portions of appellants' amended petition concerning the continuum of the injury stated:

The disposal of said saltwater amounted to approximately 750,000 barrels seeping into such underground formation and *continuing* thereon until it reached and contaminated the properties owned by the Plaintiffs. (Emphasis added)

\* \* \* \* \* \*

Thereafter, *from 1971 through November 1979, the saltwater spread* over the southern and eastern portions of Plaintiff Bayouth's farm land, contaminating and temporarily damaging approximately 50 acres. (Emphasis added)

\* \* \* \* \* \*

Plaintiffs would show that only a few acres were first contaminated and damaged in October, 1971, on the southwest boundary line of Plaintiffs', J.B. Pope, et al., land. Thereafter, the saltwater *continued to spread* on the J.B. Pope, et al., land, contaminating approximately 25 acres of pastureland by November, 1971. The saltwater migrated from Defendants' leases, wells and pits, and *continued to spread* and contaminate the surface of Plaintiffs' land to approximately 80 acres of pasture and cultivated land and two surface water tanks by June 1, 1973. By January, 1974, the Plaintiffs' land was damaged by saltwater to the extent of 100 acres of pasture and cultivated land. Thereafter, saltwater *continued to spread* to the south and east on Plaintiffs' pasture and north and east on the cultivated land, for a total acreage contaminated from the beginning period of October, 1971, to September, 15, 1978, of 110 acres. The saltwater *continued to escape* from Defendants' leases, wells and pits, migrating and traveling to Plaintiffs' land and causing damage to additional acreage

and tracts of land, damaging a total of 120 acres of land by November, 1979, said land being south and north of Farm Road 1085, two miles northwest of Sylvester, Fisher County, Texas.... Plaintiffs, J.B. Pope, et al., would further show the Court and jury that the damage to the 120 acres of land is of a temporary nature; that by plowing the 120 acres several times each year and with the rainfall leeching the soil to dilute the salt from the soil, the land can be reclaimed for normal crop production and the use of grassland in about 20 years from the time that the source of contamination is stopped. (Emphasis added)

As is clear from the above-quoted portions of their pleading, appellants' suit, by its nature, is based on a single continuous invasion which gives rise to a single cause of action for past, present and future damages.

Regarding the summary judgment evidence presented by appellants, it is important to note that, as the court pointed out in *Kraft v. Langford,* supra, the essential factor in characterizing the nature of injuries as temporary or permanent lies in its *continuum,* not its duration. Appellees' wrongful conduct had long since terminated, and no injunctive relief was available.

The soil scientist's affidavit established temporary injury only in terms of duration. The continuum of the injury was not addressed by him in his opinion.

The geologist's affidavit stated his opinion in some of the same terms used by the Supreme Court cases in describing temporary damages. However, he characterized the damage process as continuing over many years. The continuing process of saltwater invasion, in his opinion, was influenced by rainfall *over many years.* Manifestations of the continuing damage process may have been observed at irregular intervals, but its undisputed origin could only have occurred prior to 1970, at which time all appellees had discontinued operations on the lease in question. Upon the initial discovery of the saltwater invasion by appel-

lants, damages were recoverable although the full extent and duration were yet unknown.

■ The fact remains that the damage process is continuous in nature. There is no evidence that a point is ascertainable where one invasion stopped and another began. The geologist's opinion stated only that rainfall influences the flow of saltwater, not that the flow ever stops. To fit within the definition of "temporary," the very existance of damages must be sporadic and contingent on irregular forces. It is not enough that the rate of increase of a continuous invasion might be influenced by a force such as rain.

By comparison of the facts in *Atlas Chemical Industries, Inc. v. Anderson,* supra, and *Tennessee Gas Transmission Company v. Fromme,* supra, where damages were found to be permanent as a matter of law, the distinction between temporary and permanent damages is revealed. In *Atlas,* the damage to plaintiff's property depended on heavy rains causing the contaminated water in the creek to flood plaintiff's land. Thus, only upon the irregular or sporadic, flooding of plaintiff's land was he damaged by the defendant's contamination of the creek. In *Fromme,* the water discharged upon plaintiff's property from defendant's plant flowed continuously until diverted by the defendant. The invasion and resulting damage to plaintiff's land did not depend on any irregular, sporadic or intervening event. The facts in *Fromme* are analogous to those in the instant case. Accordingly, the trial court did not err in granting appellees' motion for summary judgment on the basis of limitations.

None of the briefs have cited us to any saltwater disposal cases, nor have we discovered any, which were pled or decided on a temporary damage theory as now urged by appellants. A representative case involving saltwater damage and statute of limitations issues is *Tenneco Oil Company v. Rollans,* 399 S.W.2d 217 (Tex.Civ.App.—Amarillo 1965, no writ). In *Rollans,* suit was filed on September 17, 1963, alleging saltwater damage to plaintiff's property.

Recovery was sought for the period of time within two years immediately prior to the filing of the original petition, the measure of damages being diminution in value of plaintiff's entire tract. The plaintiff prevailed in the trial court, but the cause was reversed and remanded on the basis that under defendant's plea of limitations, requested issues should have been submitted, inquiring into whether any invasions occurred more than two years before the suit was filed.

The appellate court quoted from *Tennessee Gas Transmission Co. v. Fromme,* 153 Tex. 352, 269 S.W.2d 336 (Tex.1954), regarding permanent damages, and held that the testimony as to the date of the initial invasion was sufficiently conflicting that they could not hold as a matter of law that defendant's plea of limitation should have been sustained.

In the instant case, there is no such conflict in the evidence. On the face of their pleadings, appellants allege that the invasion was discovered more than two years before suit was filed.

In *Matysek v. Medders,* 443 S.W.2d 929 (Tex.Civ.App.—Amarillo 1969, writ ref'd n.r.e.), a case similar to that at bar, where summary judgment for the defendants was upheld on the basis of limitations, it was held:

> In an action for damages for pollution of the sub-surface strata of fresh water, limitations run from the time the injury complained of became apparent or should have been discovered by due diligence on the part of the party affected by it.

> *   *   *   *   *   *

The summary judgment evidence, including the depositions of two appellants themselves, clearly establishes appellants' legal rights were invaded by the pollution of their sub-surface fresh water strata by salt water from Medders' disposal well in the Fall of 1964. Tests made at appellants' request revealed this fact. It is undisputed appellants were fully aware of the pollution in September 1964 by the salty taste of their water and subsequent

tests which confirmed the existence of excessive salt content. Appellants' cause of action for such damages to their land accrued and limitations began to run at the time the injury became apparent. *Kolberg v. Hidalgo County Water Improvement District* (Tex.Civ.App.) 110 S.W.2d 961. *Herndon v. G.C. McBride, Inc.* (Tex.Civ.App.) 342 S.W.2d 10. Since the pollution of appellants' fresh water occurred and became known to them more than two years before suit was brought on June 8, 1967, their cause of action became barred by the two-year statute of limitations.

For other examples of saltwater pollution cases characterizing injuries as permanent in nature, see *Crawford v. Yeatts,* 395 S.W.2d 413 (Tex.Civ.App.—Eastland 1965, writ ref'd n.r.e.); *Geochemical Surveys v. Dietz,* 340 S.W.2d 114 (Tex.Civ.App.—Austin 1960, writ ref'd n.r.e.).

■ As demonstrated by the foregoing authorities, appellants' allegations constitute a cause of action for permanent damages, as that term has been defined by the Supreme Court of Texas, on the basis of continuum rather than duration. Where damage to land is constant and continuous following an invasion of property by saltwater pollution, even though the extent of the damage may vary, the injury is characterized as permanent, allowing a recovery for all present and future damages in a single cause of action. That being true, appellees' statute of limitations defense, on which summary judgment was granted, was established as a matter of law by appellants' amended pleadings alleging the date they discovered the saltwater invasion of their property. It is established summary judgment law that a defense of limitations apparent from the pleadings will support a summary judgment. See *Nichols v. Smith,* 507 S.W.2d 518 (Tex.1974); *Romo v. Glascock,* 620 S.W.2d 829 (Tex.Civ.App.—Dallas 1981, no writ); *Jenkins v. Kimbro,* 380 S.W.2d 189 (Tex.Civ.App.—Austin 1964, writ dism'd); *Simpson v. Simpson,* 380 S.W.2d 855 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.); *Lacy v. Carson Manor*

*Hotel,* 297 S.W.2d 367 (Tex.Civ.App.—Dallas 1956, writ ref'd n.r.e.).

The judgment of the trial court is affirmed.