MISSOURI PACIFIC RAILROAD COMPANY *v.* DAVIS.

4-2664

Opinion delivered October 31, 1932.

*R. E. Wiley* and *Henry Donham,* for appellant.

*J. H. Lookadoo,* for appellee.

MEHAFFY, J. This action was begun by appellees who alleged in their complaint that they were the owners of a home, consisting of two lots with residence thereon, in Gurdon, Arkansas, and that they were occupying this as their home. The property is near the railroad tracks, switch yards and roundhouse of appellant. In 1927-1928 appellant constructed and equipped a coal chute, it being so constructed that it could serve four different engines at the same time. It was equipped with a carrier to carry coal about 80 feet in height and in operating it made great noise and carrying the coal to such height caused a continuous sifting of coal dust in the air which settled upon appellee's property and other adjacent property. It was alleged that the coal dust damaged appellees' property, including their furniture and other parts of their home. That said coal chute constituted a continuous nuisance to the peace, comfort and enjoyment of the occupants of said property; that the peace and

comfort of appellees' family was continuously disturbed and interfered with by employees of appellant carelessly and negligently operating appellant's trains in the switch yard and roundhouse, causing loud, continuous and prolonged whistling and noises which were not proper or necessary to the operation of the trains; that the operation and handling of the coal chute constituted a continuous nuisance and appellees asked that it be abated. They also asked judgment against the appellant for the sum of $3,000 damages to their property. The complaint was filed on July 30, 1931.

Appellant filed answer denying all the material allegations of plaintiffs' complaint, and alleging that the coal chute was completed and in operation more than three years before the suit was filed; that, if appellees' property was damaged by the erection and operation of the coal chute, the damage was an original damage inflicted upon the property by the erection of the coal chute; that the coal chute is a permanent structure and had been in continuous operation since completed; that it was a necessary instrumentality for the use of appellant in the operation of its business as a common carrier; that, if any cause of action accrued for damages to the property occupied by appellees, it accrued more than three years before the suit was filed, and that the cause of action is barred by the statute of limitations. It was further alleged in the answer that appellees acquired the property on March 30, 1931, several years after the coal chute had been constructed and completed and placed in operation; that the damage, if any, occurred long before appellees acquired the property.

The evidence showed that the property was located about two hundred feet from the coal chute; that it had been damaged by the operation of the coal chute since appellees purchased the property; that when the coal is dumped, it caused a great deal of dust to rise, and, if the wind is blowing in the direction of the property, most of it goes on the property. The coal is elevated about 80

feet by an electric motor. When the engines are run under the coal chute, they drop the coal down through a space of several feet and when it hits the tender the engine can hardly be seen and the coal dust drifts over and settles in the house and on the furniture. Appellees' evidence further showed that the engines made unnecessary noise; they would stand there and pop off and make loud blasts; they were always bumping cars around; the bumping can be heard a half mile. Some nights occupants of the house do not get an hour's rest. Appellee testified that when he bought the property it appeared to be all right. Appellee did not know about the cinders and dust at the time he bought the property. Appellee estimated the difference between the value of his property before it was damaged and afterwards at between $2,500 and $3,000. The undisputed evidence shows that the coal chute was completed and the first test made May 29, 1928, and that it has been in constant use since that date. It therefore appears from the evidence that the suit was not brought within three years after the completion of the coal chute. The jury returned a verdict against the appellant for $750, and the case is here on appeal.

The appellees did not allege in their complaint that there was any negligence either in the construction or operation of the coal chute. If it had been negligently constructed or negligently operated and such negligence caused injury to appellees' property, they would be entitled to recover, no matter when the coal chute was erected, but the structure is such that damage would necessarily result and also the certainty, nature and extent of the damage could be reasonably estimated and ascertained, and the damage was therefore original. In such cases there can be but a single recovery, and the statute of limitations against such cause of action is set in motion upon the completion of the obstruction.

We said in a recent case, speaking of a permanent structure: "If it is of such a construction as that dam-

age must necessarily result, and the certainty, nature and extent of this damage may be reasonably established and ascertained at the time of its construction, then the damage is original, and there can be but a single recovery, and the statute of limitations against such cause of action is set in motion upon the completion of the obstruction. If it is known merely that damage is probable, or that, even though some damage is certain, the nature and extent of that damage cannot be reasonably known and fairly estimated, but would be only speculative and conjectural, then the statute of limitations is not set in motion until the injury occurs, and there may be as many successive recoveries as there are injuries." *Brown* v. *Ark. Central Power Co.*, 174 Ark. 177, 294 S. W. 709. *C. R. I. & P. Ry. Co.* v. *Humphreys*, 107 Ark. 330, 155 S. W. 127.

There can be no question but that the construction of this coal chute was a permanent structure and that it was apparent as soon as it began to be operated that the damage appellee complained of would occur.

Appellee, however, testified that, soon after he bought the property, he talked with the claim agent of appellant about the damage to his property, and the claim agent told him that he would get a settlement without suit; that the claim agent asked him not to file suit, and that he would get a settlement without it, and that was the reason he did not file suit sooner. Even if the statement alleged to have been made by the claim agent could be said to amount to a promise to pay and that this was the reason of the delay in bringing the suit, it is not shown by appellees that it was made before the action was barred.

"A debtor has frequently been held to be estopped from relying on the statute as a defense where, by acts of a fraudulent character, he has misled the creditor and induced him to refrain from bringing suit within the statutory period. And if a defendant intentionally or negligently misleads a plaintiff by his misrepresenta-

tions and causes him to delay suing until the statutory bar has fallen, the defendant will be estopped from pleading the statute of limitations. And the prevailing view seems to be that the doctrine of estoppel applied where the creditor before the debt is barred is lulled into security by the oral promises of the debtor that he will not avail himself of the statute of limitations, and suit is delayed by reason thereof." *Baker-Matthews Mfg. Co.* v. *Grayling Lbr. Co.*, 134 Ark. 351, 203 S. W. 1021; *Goldsmith* v. *First National Bank of Ashdown*, 169 Ark. 1162, 278 S. W. 22; 17 R. C. L. 884.

It appears therefore that the promise by the debtor must be made before the action is barred by the statute of limitations. When a debtor is misled by the creditor before the claim is barred, and the creditor relies on the promises of the debtor, and because of said promises does not bring suit until the claim is barred by the statute, then the debtor is estopped from pleading the statute. The facts however in the present case do not show that the promises and statements of the claim agent were made before the action was barred. In fact, it is pretty clear from the evidence that it was made afterwards. The claim would have been barred in three years after May 29, 1928, and two or three other persons claiming damages because of the construction and operation of the coal chute made statements as to their claims. These statements were all made on June 8, 1931. This of course was after the cause of action was barred. If the claim agent saw appellee at the same time he saw the other persons who had claims, it was after his cause of action was barred. As the appellees did not allege negligence either in the construction or operation of the coal chute, their cause of action was barred when suit was begun.

It is contended by appellant that appellees could not maintain an action having purchased the property after the erection of the coal chute. They could not recover for any damage which occurred prior to the time they purchased it, but, if they had brought their suit within

the time allowed by statute, they would have been entitled to recover for the damage done after they purchased it.

Appellant calls attention to several authorities to sustain its contention, but all these authorities hold that the purchaser cannot recover damages for injuries occurring prior to his purchase, but he can recover for injuries which occurred after his purchase. 29 Cyc. 1258; 48 C. J. 737.

The appellees did allege in their complaint that the appellant negligently and carelessly operated its engines, and that they were disturbed and damaged thereby. We do not think the evidence is sufficient to show liability against the appellant in this respect. Of course, if the appellant operated its coal chute negligently or in any other way negligently caused damage to appellees, it would be liable. The appellees offered some evidence that the appellant should have used a spray, but there was no allegation of negligence in the complaint.

Having reached the conclusion that appellees' cause of action is barred by the statute of limitations, the judgment is reversed, and the cause dismissed.

McHANEY and BUTLER, JJ., concur.