**Jud WALTON, Appellant,**

v.

**PHILLIPS PETROLEUM COMPANY, Parker & Parsley Petroleum USA., Inc., Pioneer Natural Resources Company, and Pioneer Natural Resources USA, Inc., Appellees.**

No. 08–00–00385–CV.

Court of Appeals of Texas, El Paso.

Nov. 29, 2001.

---

Jud Walton, Midland, pro se.

John A. "Jad" Davis, Holly Beth Williams, Turner & Davis, P.C., Midland, for appellee.

Before LARSEN, McCLURE, and CHEW, JJ.

### OPINION

ANN CRAWFORD McCLURE, Justice.

Jud Walton, *pro se*, appeals from a summary judgment granted in favor of Phillips Petroleum Company, (Phillips) and Parker & Parsley Petroleum USA, Inc., Pioneer Natural Resources Company, and Pioneer Natural Resources USA, Inc. (referred to collectively as Pioneer). We affirm.

### FACTUAL SUMMARY

In November 1996, Walton filed suit against the City of Midland alleging that its sewer treatment farm had contaminated the groundwater beneath his ranch in Midland County. In May 1998, he added several other defendants, including Phillips and Pioneer. With respect to these defendants, he alleged that their operation of open salt water pits had contaminated the groundwater and that they had failed to prevent the migration of pollutants from the pits to the groundwater.

The trial court granted summary judgment with respect to the City of Midland and several other defendants in September 1998, and then severed those summary judgments into a new cause number. Walton filed notice of appeal to this court on January 7, 1999. As that appeal remained pending, Phillips and Pioneer filed motions for traditional and no-evidence summary judgment. Although they filed separate motions, the grounds raised are identical: (1) Walton's claims for permanent damages are barred by limitations; (2) Walton's damages are permanent rather than temporary as a matter of law; and (3) there is no evidence of causation. Before the trial court ruled on these motions for summary judgment, we affirmed in part and reversed in part those summary judgments granted in favor of the City of Midland and other defendants. *See Walton v. City of Midland,* 24 S.W.3d 853 (Tex. App.—El Paso 2000, no pet.). Having the benefit of our decision, the trial court granted Phillips' and Pioneer's motions for summary judgment and then entered a severance order which rendered those judgments final.

### PROPRIETY OF SUMMARY JUDGMENT

In Issues One and Two, Walton challenges the granting of summary judg-

ment in favor of Phillips and Pioneer on his nuisance, negligence, and trespass causes of action. Before addressing the statute of limitations issue raised in the traditional summary judgment motion, we will consider the no-evidence summary judgment granted on the element of causation. In that respect, Walton argues that the trial court improperly granted a no-evidence summary judgment in favor of Phillips and Pioneer because their motions did not comply with Tex.R.Civ.P. 166a(i) and because he produced sufficient evidence to raise a genuine issue of material fact as to the challenged elements. With respect to his first argument, it is waived because Walton did not raise this objection in the trial court. *See Walton,* 24 S.W.3d at 857;[1] *Williams v. Bank One, Texas, N.A.,* 15 S.W.3d 110, 117 (Tex.App.—Waco 1999, no pet.); *Roth v. FFP Operating Partners, L.P.,* 994 S.W.2d 190, 194–95 (Tex.App.—Amarillo 1999, pet. denied).

### Standard of Review—No Evidence Motion

■ Turning to the merits of the issue, a no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency stan-

dard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wyatt v. Longoria,* 33 S.W.3d 26, 31 (Tex.App.—El Paso 2000, no pet.); *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied); *see also S.V. v. R.V.,* 933 S.W.2d 1, 8 (Tex.1996). We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *Wyatt,* 33 S.W.3d at 31. A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Havner,* 953 S.W.2d at 711; *Wyatt,* 33 S.W.3d at 31. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Wyatt,* 33 S.W.3d at 31; *Ruiz v. Government Employees Ins. Co.,* 4 S.W.3d 838, 840 (Tex.App.—El Paso 1999, no pet.), *citing Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evi-

---

1. Other intermediate appellate courts have reached the opposite conclusion and have determined that it is not necessary to object in the trial court to an insufficient Rule 166a(i) motion. *See Cuyler v. Minns,* 60 S.W.3d 209, 212–14 (Tex.App.—Houston [14th Dist.] 2001, no pet.h.)(holding that Rule 166a(i) motion which did not specify element it challenged and did not distinguish between its traditional summary judgment grounds and no-evidence grounds is insufficient as a matter of law and may be challenged for first time on appeal); *Callaghan Ranch, Ltd. v. Killam,* 53 S.W.3d 1, 3 (Tex.App.—San Antonio 2000, pet. denied)(holding that Rule 166a(i) motion which did not specify element it challenged is insufficient as a matter of law and may be challenged for first time on appeal). Even if Walton is permitted to raise this challenge for the first time on appeal, his argument is with-

out merit. Walton is correct that neither Phillips nor Pioneer specifically referenced Rule 166a(i) in their motions for summary judgment. However, both of them plainly alleged that "there is no evidence that [their respective] operations caused [Walton's] damages." Elsewhere, they stated that there is no evidence of causation. Thus, Phillips and Pioneer adequately identified causation as the challenged element. As evidence that Walton understood the motion to raise a no-evidence challenge to the causation element, Walton stated, "As to Defendants' allegation that there is no evidence of causation, it is undisputed that Phillips Petroleum conducted oil and gas operations on Section 35 and Sections [sic] 38 of Plaintiff's ranch and that the Pioneer Defendants presently conduct oil and gas operations in the same two sections."

dence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711; *Wyatt*, 33 S.W.3d at 31.

### Causation—Phillips

■ Although it is not required to do so, Phillips offered summary judgment evidence in an effort to negate causation. According to an affidavit of Tom Atkins, Senior Land Specialist with Phillips Petroleum Company, Phillips is currently operating only one well located on Section 47 of the Walton Ranch. It "spudded" this well on December 9, 1978, and completed it on March 31, 1979. Atkins' visual inspection of the well and review of certain records revealed no evidence that a salt water disposal pit had been used in connection with this well. In fact, the records indicate that produced water from the well is transported to a commercial salt water disposal facility. Phillips had previously possessed a leasehold interest in portions of Sections 35, 37, 43, and 47 but it assigned all of those oil and gas leasehold interests to Wood & Cockburn, Inc. on October 9, 1970. Additionally, it assigned all of the working interest in a lease located in the NW/4 of Section 47 to Midland Resources, Inc. in 1985.

In an effort to establish causation, Walton points to evidence that Phillips admittedly conducted oil and gas operations in Section 35 prior to 1970 and that a salt water disposal pit had been identified on the property by Mark Henkhaus, District Director for the Texas Railroad Commission, through the examination of aerial photographs. He also tendered the affidavit of Paul Dowling, a Technical Environmental Projects Manager, to show that the salt water disposal pit located adjacent to Walton's water well on Section 35 is a probable source of the contamination of the water well. Similarly, Walton relied on the deposition testimony of George William Hartzoge, who had also formed the opinion that the source of contamination is more probably than not "a salt water pit." Standing alone, evidence that Phillips conducted operations on a portion of Section 35 and that a salt water disposal pit is found on the section does not establish that Phillips actually utilized the pit for the disposal of production water. Following the summary judgment hearing, Walton offered additional evidence in an effort to establish causation. Through the testimony of Henkhaus, Walton showed that Phillips had operated the Beth A well and produced 10,732 barrels of salt water in 1961. When asked whether operators, twenty to thirty years earlier, put salt water into pits on the same lease from which it was produced, Henkhaus stated as follows:

> [Answer]: Generally speaking, yes. It was because that's the least costly way to handle the salt water.

At oral argument, counsel for Phillips expressly conceded that there is evidence from which it may be concluded that Phillips disposed of salt water in the pits during the early 1960's. Presumably, counsel made reference to the foregoing evidence. Given this concession, we find that the trial court erred in granting summary judgment in favor of Phillips on the causation ground.

### Causation—Pioneer

■ Similar to the argument made with respect to Phillips, Walton argues that he produced some evidence of causation by showing Pioneer currently conducts operations on Sections 35 and 38, the same sections on which the contaminated water wells are located. He points to no evidence that Pioneer has ever improperly disposed of salt water on either of these sections. Consequently, the trial court did not err in granting Pioneer's motion for

summary judgment as to the causation-element.

### Claim for Injunctive Relief

■ Walton additionally argues that summary judgment in favor of Pioneer is erroneous because it failed to address his claim for injunctive relief. The request for injunctive relief is related to Walton's claim of nuisance. A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use or enjoy it. *Nugent v. Pilgrim's Pride Corp.*, 30 S.W.3d 562, 574–75 (Tex. App.—Texarkana 2000, pet. denied). A nuisance may arise by causing (1) physical harm to property, such as by the encroachment of a damaging substance or by the property's destruction, (2) physical harm to a person on his property from an assault on his senses or by other personal injury, and (3) emotional harm to a person from the deprivation of the enjoyment of his property through fear, apprehension, or loss of peace of mind. *Nugent*, 30 S.W.3d at 575. A party may be entitled to abatement of a nuisance or damages if it is not susceptible of abatement. *See General Mills Restaurants, Inc. v. Texas Wings, Inc.*, 12 S.W.3d 827, 834 (Tex.App.—Dallas 2000, no pet.). Pioneer moved for summary judgment on the ground that there is no evidence that it caused Walton's damages, which in the case of a nuisance claim is the encroachment of a damaging substance onto the property. Given Walton's failure to produce some evidence of causation, he has failed to establish that Pioneer caused the nuisance, and thus, he is not entitled to injunctive relief or damages. Issue Two is overruled.[2]

### Statute of Limitations

We now consider Walton's argument that the trial court erred in finding that his causes of action against Phillips for nuisance, negligence and trespass are barred by the statute of limitations. He argues that Phillips (1) failed to conclusively prove that he suffered a permanent injury to land; (2) failed to negate the doctrine of fraudulent concealment; and (3) failed to address his request for injunctive relief or his claim of continuing tort.

### Standard of Review—Traditional Summary Judgment

■ The standard for reviewing a summary judgment granted under Texas Rule of Civil Procedure 166a(c) is whether the successful movant at the trial level carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 784 (Tex.App.—El Paso 1996, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Duran*, 921 S.W.2d at 784. In resolving these issues, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be

---

**2.** Walton raises additional sub-arguments under Issue Two related to the granting of summary judgment on limitations grounds. Because Pioneer established its entitlement to summary judgment under Rule 166a(i), it is unnecessary to address these additional arguments.

resolved in the non-movant's favor. *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Duran*, 921 S.W.2d at 784. If, as in this case, the trial court's judgment does not specify the ground relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

 A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pled or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. *Id.* If the movant establishes that the statute of limitations bars the action, the non-movant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

### Accrual of Walton's Cause of Action for Damages to Land

 Walton's suit for damages to land is subject to a two-year statute of limitations. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon Supp.2001). Ordinarily, the statute of limitations begins to run when a particular cause of action accrues. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 436 (Tex.App.—Fort Worth 1997, pet. denied). Determining what rule of accrual to apply is a question of law. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990); *Mitchell Energy*, 958 S.W.2d at 436. As to the defendant's burden under the first prong of the test stated in *KPMG Peat Marwick*, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later. *S.V.*, 933 S.W.2d at 4; *Tanglewood Terrace, Ltd. v. City of Texarkana, Texas*, 996 S.W.2d 330, 336 (Tex.App.—Texarkana 1999, no pet.). Further, in determining when a cause of action for damages to land accrued, as in this case, a distinction must be drawn between a claim based upon permanent damages and one for temporary damages.[3] An action for permanent damages to land accrues, for limitations purposes, upon the date of discovery of the first actionable injury, not on the date the damages to the land are fully ascertainable. *Bayouth*, 671 S.W.2d at 868; *Corley v. Exxon Pipeline Co.*, 821 S.W.2d 435, 437 (Tex.App.—Houston [14th Dist.] 1991, writ denied). Thus, an action to recover damages for permanent injury to land must be brought within two years from the date of discovery of the initial injury. *Bayouth*, 671 S.W.2d at 868; *Yancy v. City of Tyler*, 836 S.W.2d 337, 341 (Tex.App.—Tyler 1992, writ denied). In contrast, a suit to recover damages for temporary injuries, because they are tran-

---

**3.** This same distinction will determine the type of compensation to be awarded for an injury to real property. *See Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978). Where land is found to have been permanently injured, the landowner is entitled to recover the difference in the value of the property before and after injury. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984); *Kraft*, 565 S.W.2d at 227. Damages for temporary injury are equivalent to the amount of damages that accrued during the continuance of the period for which the action is brought. *Bayouth*, 671 S.W.2d at 868. Because the concepts of permanent and temporary damages are mutually exclusive, a party cannot recover both types of damages in a single action. *Kraft*, 565 S.W.2d at 227.

sient in nature, may be brought for those injuries sustained within two years prior to filing of the suit. *Yancy,* 836 S.W.2d at 341; *see Anders v. Mallard and Mallard, Inc.,* 817 S.W.2d 90, 93–94 (Tex.App.—Houston [1st Dist.] 1991 no writ); *Abbott v. City of Princeton, Texas,* 721 S.W.2d 872, 875 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

### *Walton's Damages are Permanent*

■■■■■ Walton first challenges the trial court's implicit determination that the injury to his land is permanent. He argues that the existence of a fact issue regarding whether his damages are permanent or temporary precludes summary judgment. The character of an injury as either permanent or temporary is determined by its continuum. *Bayouth,* 671 S.W.2d at 868; *Kraft,* 565 S.W.2d at 227. A permanent injury is constant and continuous as opposed to occasional, intermittent, or recurrent. *Bayouth,* 671 S.W.2d at 868; *Kraft,* 565 S.W.2d at 227. As the Supreme Court has stated, a permanent injury results "from an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely." *Bayouth,* 671 S.W.2d at 868; *Atlas Chemical Industries, Inc. v. Anderson,* 524 S.W.2d 681, 684 (Tex.1975). Temporary injuries, however, have been found where the injury is not continuous, but is sporadic and contingent upon some irregular force such as rain. *Bayouth,* 671 S.W.2d at 868; *Kraft,* 565 S.W.2d at 227; *Atlas,* 524 S.W.2d at 685.

■■■■■ In *Atlas,* the Supreme Court explained the rationale for the development of a distinction between permanent and temporary injuries to land:

> The question of the temporary or permanent character of injury to land was initially conceived as an aspect of damages. At common law, a plaintiff suing for a continuing invasion of his land could recover for only those damages accrued by the time of trial. *Uline v. New York Cent. & H.R.R. Co.,* 101 N.Y. 98, 4 N.E. 536 (1886). To relieve the burden placed upon an aggrieved landowner to bring successive suits, the courts developed the concept of permanent injury to permit the recovery of past and future damages. *Town of Troy v. Cheshire R. Co.,* 23 N.H. 83, 55 Am. Dec. 177 (1851); *McCormick on Damages* s 127, at 505. Coactive with the advantage of a future damage award was the disadvantage of bringing the action within the limitation period as measured from the first injury; i.e., the cause of action accrued for limitations purposes at the time of the first actionable injury. As Professor McCormick stated, 'the plaintiff, who ought certainly to be given a continuing possibility of redress against a continuing wrong, finds himself blocked by a plea of limitations based on the claim that the only cause of action arose when the nuisance was first established.' *McCormick on Damages,* s 127, at 513. *See Prosser, Handbook on the Law of Torts,* s 13 at 75 (4th Ed.1971). *Missouri Pacific Ry. Co. v. Davis,* 186 Ark. 401, 53 S.W.2d 851 (1932); *Schlosser v. Sanitary Dist. of Chicago,* 299 Ill. 77, 132 N.E. 291 (1921); *McDaniel v. City of Cherryvale,* 91 Kan. 40, 136 P. 899 (1913); 21 Ill. L.Rev. 629 (1927); 27 Ill.L.Rev. 953 (1933); 21 Minn.L.Rev. 334 (1936).

*Atlas,* 524 S.W.2d at 684. Thus, where a nuisance is permanent and continuing, the damages resulting from it should all be estimated in one suit. *Atlas,* 524 S.W.2d at 685; *Austin & N.W. Ry. Co. v. Anderson,* 79 Tex. 427, 15 S.W. 484, 485 (1891). If it is not permanent, but depends on accidents and contingencies so that it is of a transient character, succes-

sive actions may be brought for injury as it occurs. *Atlas,* 524 S.W.2d at 685. In such a case, an action would not be barred by limitations until the statute had run against the special injury. *Id.*

Two cases from the Texas Supreme Court are instructive in determining whether the injuries at issue here are permanent or temporary. In *Tennessee Gas Transmission Co. v. Fromme,* 153 Tex. 352, 269 S.W.2d 336 (1954), the court held that the damage resulting from a continuous flow of polluted water on the plaintiff's land for four years constituted permanent damages as a matter of law. *Tennessee Gas,* 269 S.W.2d at 337–38. Even though the greatest part of the damages did not occur until within two years of filing suit, the cause of action for damages arose at the time the water began flowing onto the property and not when the extent of the damages became fully ascertainable some time later. *Id.* at 338. Similarly, in *Vann v. Bowie Sewerage Co., Inc.,* 127 Tex. 97, 90 S.W.2d 561 (1936), a septic tank had continually discharged polluted water into a creek which flowed through the plaintiff's land. The court found the damages to be permanent. *Vann,* 90 S.W.2d at 562–63.

■ In his petition, Walton alleged that he suffered temporary injury to his land because Phillips disposed of production water in open salt water pits and then did not take adequate steps to prevent the migration of pollutants to the groundwater beneath his property. He further alleged that the pollution was sporadic and contingent upon irregular forces such as rainfall or the migration of the City of Midland's effluent water through the aquifer. In determining whether this injury is permanent or temporary, it is helpful to first focus on the activity causing the injury and then the injury itself. The summary judgment evidence produced by Phillips showed that prior to the late 1960's, oil and gas producers utilized salt water disposal pits to dispose of the waste water generated during oil production. Due to concern about groundwater contamination from surface disposal of produced water during that time period, the Texas Railroad Commission issued in the late 1960's what is commonly referred to as a "no pit" order which prohibited use of these pits. In response to the order, the oil companies backfilled the salt water disposal pits located on and near Walton's property which removed them as a source of contamination. According to George Hartzgoge, contamination from the pits did not occur after the backfilling because the pits no longer had standing water in them which acted to dissolve the contaminated material and carry it through the ground and into the groundwater. After the pits were backfilled, the relatively small amounts of water to which the pits were exposed would percolate down rapidly and not pick up the contamination in the same manner as did the standing water.

Walton relies on the affidavit of Paul Dowling to create a fact issue regarding the temporary nature of the injury to his land. Dowling's affidavit states, in pertinent part, that:

6. I took purged water samples from the subject well located in Section 35. The analysis of this water showed the presence of high TKNs and fecal coliform. These findings indicate that the City of Midland's Sewer Farm is a probable source of the contamination of this well.

7. I supervised the drilling of a test well between the Section 35 water well and the old salt water pit, identified by Mark Henkhaus, the District Director of the Texas Railroad Commission. The analysis of water from this test well showed chlorides in excess of 4000 ppm.

This finding indicates that the salt water pit is also a probable source of the contamination of the subject water well.

8. It is my conclusion that the probable source of the pollution in Walton's wells is a combination of water from the City of Midland's Sewer Farm and the old salt water pits located near the ranch wells.

9. The injury to Walton's property and groundwater has occurred at various times and in varying degrees, depending upon such occasional natural forces as the amount of rainfall in the area; the amount of effluent being applied by the City of Midland at various times; and the nature and extent of hydraulic pressure pushing the contaminated water from the Sewer Farm to the Walton property.

10. The damage caused to Walton's property by the City of Midland Sewer Farm and the old salt water pits will not continue indefinitely if the City of Midland corrects its poor effluent management practices; additionally the chlorides in the salt water pits would cease to percolate into the aquifer if the pits were properly remediated.

11. From my experience in servicing the oilfield and agricultural communities and based upon my understanding of the chemical components of Walton's water out of the two subject wells, it is my opinion that the excessive chlorides, TKNs, and fecal coliform content of the water from the two wells, is unmarketable for certain oilfield uses, and renders it unfit for human and animal consumption as well as for farming operations.

As in *Tennessee Gas* and *Vann*, the activity which caused the initial contamination of the groundwater, namely, the operation of the open pits, was a continuous source of pollution rather than the type of sporadic activity or injury at issue in those cases finding a temporary injury. *See Tennessee Gas*, 269 S.W.2d at 337–38 and *Vann*, 90 S.W.2d at 562–63. Dowling's affidavit does not contradict this fact or create a fact issue in this regard. Furthermore, the summary judgment evidence, including Dowling's affidavit, established that Walton's groundwater is presently contaminated and has been for several years. Although Dowling seems to be of the opinion that the degree of contamination varies, there is no evidence that the contamination is ever non-existent or significantly diminished due to a change in circumstances. Under these facts, the injury is permanent rather than temporary. *Compare Tennessee Gas*, 269 S.W.2d at 337–38 and *Vann*, 90 S.W.2d at 562–63 *with Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978)(flooding caused by a storm drainage system which occurred only with heavy rains was a temporary injury); *Gulf Coast Sailboats, Inc. v. McGuire*, 616 S.W.2d 385, 387 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (fiberglass particles and odor which traveled with the wind onto plaintiff's property but did not cause long-lasting problems was a temporary injury); *Austin & N.W. Railway Company*, 79 Tex. 427, 15 S.W. at 485 (sporadic flooding which occurred after construction of roadbed was a temporary injury); *Parsons v. Uvalde Electric Light Co.*, 106 Tex. 212, 163 S.W. 1, 2 (1914)(occasional emission of smoke, dust, and cinders from electric company's generator plant was a temporary injury). Therefore, Walton was required to bring his causes of action within two years of the initial injury.

### *Accrual of the Causes of Action and Negation of the Discovery Rule*

■ The next issues to be determined are whether Phillips conclusively proved when the causes of action accrued and

whether it negated the discovery rule. The evidence established that the contamination of Walton's groundwater occurred in the 1960's during Phillips' active operation of the open pits. Additional contamination from the pits ceased when they were backfilled. Although we do not have an exact date, Walton's causes of action accrued no later than the late 1960's.

 As we stated in Walton's prior appeal, knowledge of facts that could cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action is "in the law equivalent to knowledge of the cause of action for limitation purposes." *Walton*, 24 S.W.3d at 859, *quoting Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 747 (Tex.App.—Houston [14th Dist.] 1993, writ denied). The evidence shows, as it did in the prior appeal, that Walton contacted the Texas Water Commission in 1993 regarding concerns about his groundwater. *Walton*, 24 S.W.3d at 860. The Water Commission's analysis showed contamination to a certain depth and recommended further testing to determine the lower limits of contamination. *Id.* This evidence conclusively establishes facts that would cause a reasonably prudent person to make inquiry into whether his groundwater had been contaminated. *Id.* Thus, Phillips and Pioneer negated the discovery rule by proving as a matter of law there is no genuine issue of material fact about when Walton discovered the nature of their injury. Because Walton failed to bring his claims for trespass, nuisance and negligence within two years of discovering the contamination, his claims are barred by limitations.

### Phillips' Failure to Address Other Theories

Walton additionally argues that summary judgment is erroneous because Phillips did not challenge any element of continuing tort, fraudulent concealment, or the request for injunctive relief. The doctrines of continuing tort and doctrine and fraudulent concealment are not independent causes of action but rather are related to the statute of limitations defense. *See Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 443 (Tex.App.—Fort Worth 1997, pet. denied)(stating that the continuing tort doctrine is a limited exception to the statute of limitations); *Arabian Shield Development Co. v. Hunt*, 808 S.W.2d 577, 584 (Tex.App.—Dallas 1991, writ denied)(describing fraudulent concealment as an equitable doctrine such that a defendant who conceals his wrongful conduct, either by failing to disclose it when under a duty to disclose or by lying about his conduct, is estopped to assert the statute of limitations).

 The continuing tort doctrine does not apply because Walton's injury is permanent. *See Tennessee Gas*, 269 S.W.2d at 337 (negligence and trespass claims based on permanent injury to land must be brought within two years of date of first actionable injury); *Austin & N.W. Ry. Co.*, 79 Tex. 427, 15 S.W. at 485 (where a nuisance is permanent and continuous, the damages should all be estimated in one lawsuit); *Mitchell Energy*, 958 S.W.2d at 443 (continuing tort doctrine does not apply in case of permanent injury; therefore, statute of limitations barred negligence, nuisance, and trespass claims).

 Walton argues that fraudulent concealment exists because the oil companies backfilled the open pits with dirt, thereby concealing their existence. Fraudulent concealment is based on the doctrine of equitable estoppel. *Mitchell Energy*, 958 S.W.2d at 439. If applicable, this doctrine estops a defendant from relying on the statute of limitations as an affirmative defense to the plaintiff's claim.

*Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983); *Mitchell Energy*, 958 S.W.2d at 439. Unlike the discovery rule, which determines when the limitations period begins to run, the doctrine of fraudulent concealment tolls or suspends the running of limitations after it has begun because the defendant concealed from the plaintiff facts necessary for the plaintiff to know that he had a cause of action. *Mitchell Energy*, 958 S.W.2d at 439. However, a plaintiff's knowledge of facts, conditions, or circumstances that would cause a reasonable person to make inquiry leading to the discovery of a concealed cause of action is in the law equivalent to knowledge of the cause of action for limitations purposes. *Id.* The elements of fraudulent concealment are: (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Id.*

By backfilling the open pits, Phillips and the other oil companies utilized a recommended method to remediate the open pits. This does not qualify as deception to conceal a tort. Further, as we have already determined, Walton knew in 1993 that some contamination had occurred and the Water Commission recommended further testing to determine the depth of contamination. At that point, any further reliance by Walton on the alleged deception would have been unreasonable. Therefore, any tolling effect would have ended in 1993 with Walton's discovery of the contamination. *Mitchell Energy*, 958 S.W.2d at 442. The trial court properly granted summary judgment in favor of Phillips on limitations.

█ Finally, Walton's request for injunctive relief is not an independent cause of action. Instead, it is a type of relief that may be available in a nuisance claim.

Because Phillips established that all causes of action are barred by limitations, Walton is not entitled to injunctive relief. For all of these reasons, Issue One is overruled.

## CONSIDERATION OF SUPPLEMENTAL RESPONSE

█ In Issue Three, Walton alleges that the trial court improperly considered a supplemental letter brief filed by counsel for Phillips and Pioneer without giving him an opportunity to respond. Following the May 17, 2000 hearing on the motion for summary judgment, Walton filed a letter and attached supplemental summary judgment evidence. In response, Phillips and Pioneer submitted a letter which took issue with the supplemental evidence and argument and also provided the trial court with a copy of our opinion in *Walton v. City of Midland*. The trial court considered both letters in ruling on the motions for summary judgment on June 1, 2000. Walton cites no authority in support of his argument that he should have been provided with additional time to respond. Therefore, it is waived. TEX.R.APP.P. 38.1(h); *City of Midland v. Sullivan*, 33 S.W.3d 1, 17 (Tex.App.—El Paso 2000, pet. dism'd w.o.j.). We overrule Issue Three and affirm the summary judgment.

LARSEN Justice, concurring.

Although I concur in the result reached by the majority, I write to admit I was wrong in joining our earlier panel opinion in *Walton v. City of Midland*, 24 S.W.3d 853, 857 (Tex.App.—El Paso 2000, no pet.). Specifically, I have concluded that a no-evidence motion for summary judgment, just as a motion for summary judgment under the traditional rule, must stand on its own merits, and that a motion under TEX.R.CIV.P. 166a(i) that is conclusory or that does set out specifically the elements it challenges is may be challenged for the

first time on appeal. Having read the San Antonio court's opinion in *Callaghan Ranch, Ltd. v. Killam*, 53 S.W.3d 1, 3 (Tex.App.—San Antonio 2000, pet. denied) and that of the Houston Fourteenth court in *Cuyler v. Minns*, 60 S.W.3d 209, 212–14 (Tex.App.—Houston [14th Dist.] 2001, no pet.h.). I believe their analysis on this issue is the correct one.

The comment to 166a(i) states that "[t]he motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) *does not authorize* conclusory motions or general no-evidence challenges to an opponent's case." (Emphasis added.) Thus, even where a nonmovant did not object or respond to the defective motion below, if it is conclusory, general, or does not state the elements as to which there is no evidence, it cannot support a judgment. This is the rule with traditional summary judgments, and I perceive the same policy reasons for applying it to no-evidence motions.

I therefore disagree with the majority's statement that Walton waived his argument that the no-evidence summary judgment here by not objecting to a perceived failure to specify the challenged elements. Nevertheless, I agree that the motion here sufficiently raised a no-evidence challenge to causation, and therefore I believe the outcome is correct.